**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DAVID KONDNER AND BRANDON JORDAN, Derivatively On Behalf Of VELODYNE LIDAR, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> JOSEPH B. CULKIN, ANAND GOPALAN, BARBARA SAMARDZICH, MICHAEL E. DEE, ANDREW HAMER, MARTA THOMA HALL, DAVID S. HALL, AND JAMES A. GRAF, <br><br> Defendants, <br><br> -and- <br><br> VELODYNE LIDAR, INC., <br><br> Nominal Defendant. | Case No.: <br><br><br> **JURY DEMANDED** |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Plaintiffs David Kondner and Brandon Jordan ("Plaintiffs"), by and through their undersigned counsel, derivatively on behalf of Nominal Defendant Velodyne Lidar, Inc. ("Velodyne" or the "Company"), submits this Verified Shareholder Derivative Complaint (the "Complaint"). Plaintiffs' allegations are based upon their personal knowledge as to themselves and their own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Velodyne with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record. Plaintiffs believe that substantial evidentiary support will exist for the

allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTTION

1.      This is a shareholder derivative action brought on behalf of and for the benefit of the Company, against certain of its officers and/or directors named as defendants herein seeking to remedy Defendants (defined below) violations of Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), and their breaches of fiduciary duties and other wrongful conduct as alleged herein and that occurred from October 2, 2019 to the present (the "Relevant Period").  Defendants' actions have caused, and will continue to cause, substantial financial harm and other damages to the Company, including damages to its reputation and goodwill.

2.      The Company provides solutions to develop automated systems including real-time surround view lidar sensors.  The Company became a public entity on or about September 29, 2020 when it merged with Graf Industrial Corp., a special purpose acquisition company.

3.      On February 22, 2021, the Company announced that the Board had "removed David Hall as Chairman of the Board and terminated Marta Hall's employment as Chief Marketing Officer of the Company" after the Audit Committee's investigation "concluded that Mr. Hall and Ms. Hall each behaved inappropriately with regard to certain Board and Company processes, and failed to operate with respect, honesty, integrity, and candor in their dealings with Company officers and directors."  Further, the Company announced that the Company's Board formally censured Mr. Hall and Ms. Hall, but that they would remain directors of the Company.

4.      On this news, the Company's common stock dropped $3.14, or approximately 15%, to close at $17.97 per share on February 22, 2021, on unusually heavy trading volume.  Further, the Company's warrants fell $1.47, or approximately 20%, to close at $5.90 per warrant on

February 22, 2021.

### JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under Section 10(b) of the Exchange Act, 15. U.S.C. § 78j(b), and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f).  Plaintiffs' claims also raise a federal question pertaining to the claims made in the Securities Class Action (defined below) based on violations of the Exchange Act.

6.      This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this Court in accordance with 28 U.S.C. § 1391 because the Company's is incorporated in Delaware.  The Company's By-laws provide:

> Section 12.1      Forum. Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for any stockholder (including a beneficial owner) to bring (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of a fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim against the Corporation, its directors, officers or employees arising pursuant to any provision of the DGCL or this Second Amended and Restated Certificate or the Bylaws, or (iv) any action asserting a claim against the Corporation, its directors, officers or employees governed by the internal affairs doctrine, except for, as to each of (i) through (iv) above, any claim (A) as to which the Court of Chancery determines that there is an indispensable party not subject to the jurisdiction of the Court of Chancery (and the indispensable party does not consent to the personal jurisdiction of the Court of Chancery within ten days following such determination), (B) which is vested in the exclusive jurisdiction of a court or forum other than the Court of Chancery, or (C) for which the Court of Chancery does not have subject matter jurisdiction, including, without limitation, any claim arising under the federal

securities laws, as to which the federal district court for the District of Delaware shall be the sole and exclusive forum.

## PARTIES

**Plaintiffs**

8.      ***Plaintiff David Kondner*** ("Plaintiff Kondner") acquired the Company securities and will continue to hold Velodyne shares throughout the pendency of this action.  Plaintiff Kondner will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

9.      ***Plaintiff Brandon Jordan*** ("Plaintiff Jordan") acquired the Company securities and will continue to hold Velodyne shares throughout the pendency of this action.  Plaintiff Jordan will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

**Nominal Defendant**

10.     ***Nominal Defendant Velodyne*** is incorporated under the laws of Delaware with its principal executive offices located in San Jose, California.  Velodyne's common stock trades on the NASDAQ exchange under the symbol "VLDR" and its warrants trade under the symbol "VLDRW."

**Director Defendants**

11.     ***Defendant Joseph B. Culkin*** ("Culkin") co-founded the Company's predecessor company, Velodyne Acoustics, and has been involved in the Company throughout its history, including serving as a member of the Company's Board since September 2016.

12.     ***Defendant Barbara Samardzich*** ("Samardzich") has served as a member of the Company's Board since October 2016.  Defendant Samardzich is the Chair of the Compensation Committee and a member of the Audit Committee.  On January 18, 2021, Defendant Samardzich

informed the Board of the Company that she would not stand for re-election as a Class I director at the Company's 2021 annual meeting of stockholders.

13.     ***Defendant Michael E. Dee*** ("Dee") serves as a member of the Company's Board. Defendant Dee is a member of the Audit Committee.  Defendant Dee is the President and Chief Financial Officer of Graf and has been in this role since September 2018 and also serves as a member of Graf's board of directors.  Dee has also been the President and Chief Financial Officer since September 2018 of the Company.

14.     ***Defendant Anand Gopalan*** ("Gopalan") is the Company's Chief Executive Officer ("CEO") and President.  Defendant Gopalan has served as the Company's CEO since January 2020 and as a member of the Company's Board since July 2019.  Prior to becoming the Company's CEO in January 2020, Defendant Gopalan had served as the Company's Chief Technology Officer since June 2016.  In his role as Chief Technology Officer, Defendant Gopalan was responsible for all the new technology and advanced product development at the Company.  He further worked alongside Defendant Hall on technology and business strategy and was the technical face of the Company with all its major customers.

15.     ***Defendant Marta Thoma Hall*** ("M. Hall") is married to Defendant David S. Hall, the Company's founder, and has served as a Company director since January 2020. Previously, she served as the Company's CMO from January 2020 until February 2021. She also served as Velodyne's President and Chief Business Development Officer from December 2015 until January 2020. She also served as Vice President of Marketing of the Company's predecessor, Velodyne Acoustics, from 2009 to 2010 and then as President from 2010 until the Company was formed as an independent entity in December 2015. Additionally, according to the October 2020 8-K, as of September 29, 2020, Defendant M. Hall, together with her husband, Defendant David S. Hall,

beneficially owned 92,223,730 shares of the Company's common stock, which represented 56.9% of the Company's outstanding common stock as of September 29, 2020, rendering her, together with her husband, a controlling shareholder.  As the Company admits, Defendant M. Hall is a non-independent director. Upon information and belief, Defendant M. Hall has received and continues to receive compensation for her role as a director.

16.     **Defendant David S. Hall** ("D. Hall") is the founder of the Company and is married to Defendant M. Hall.  Defendant D. Hall served as a Company director from December 2015 until he resigned in March 2021. He also served as the Company's Executive Chairman from January 2020 until he resigned in January 2021. Previously, he served as the Company's CEO from December 2015 until January 2020. He also served as the CEO of Velodyne Acoustics, the Company's predecessor, from 1983 until the Company was formed as an independent entity in December 2015. According to a Schedule 13D filed with the SEC on February 12, 2021, as of February 12, 2021, Defendant D. Hall beneficially owned 98,545,299 shares of the Company's common stock, which represented 58.4% of the Company's outstanding shares of common stock on that date making him a controlling shareholder.

17.     **Defendant James A. Graf** ("Graf") served as a Company director from September 2020 until he resigned on February 15, 2021. He also served as a member of the Compensation Committee.

18.     Defendants Culkin, Samardzich, Dee, Gopalan and M. Hall are herein referred to as "Director Defendants."

**Officer Defendant**

19.     **Defendant Andrew Hamer** ("Hamer") was the Company's Chief Financial Officer ("CFO") at all relevant times.

20.     The Director Defendants and Defendants Hamer are collectively referred to herein as "Defendants".

**Non-Parties**

21.     On February 24, 2021, the Board appointed Hamid Zarringhalam as a Class I director.  Zarringhalam was also appointed to the Company's compensation committee.

22.     On February 24, 2021, the Board appointed Christopher Thomas as a Class I director.  Thomas is a member of the Compensation Committee and the Chair of the Audit Committee.

## THE COMPANY'S CORPORATE GOVERNANCE

23.     As members of Board, the Director Defendants were held to the highest standards of honesty and integrity and charged with overseeing the Company's business practices and policies and assuring the integrity of its financial and business records.

24.     The conduct of the Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Velodyne, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its investors that the Director Defendants were aware posed a risk of serious injury to the Company

## DUTIES OF THE DIRECTOR DEFENDANTS

25.     By reason of their positions as officers, directors, and/or fiduciaries of Velodyne and because of their ability to control the business and corporate affairs of Velodyne, the Director Defendants owed the Company and its shareholders the fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Velodyne in a fair, just, honest, and equitable manner.  The Director Defendants were and are required to act in furtherance of the best interests of Velodyne and its shareholders.

26.     Each director and officer of the Company owes to Velodyne and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Director Defendants had a duty to promptly disseminate accurate and truthful information regarding the Company's operations, finances, financial condition, and present and future business prospects so that the market price of the Company's stock would be based on truthful and accurate information.

27.     The Director Defendants, because of their positions of control and authority as directors and/or officers of Velodyne, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their advisory, executive, managerial and directorial positions with Velodyne, each of the Defendants had access to adverse non-public information about the financial condition, operations, sales and marketing practices, and improper representations of Velodyne.

28.     To discharge their duties, the officers and directors of Velodyne were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Velodyne were required to, among other things:

(a)     Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(b)     Conduct the affairs of the Company in an efficient, businesslike manner so

as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     Properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(d)     Remain informed as to how Velodyne conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws;

(e)     Ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state and local laws, and rules and regulations; and

(f)     Ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

29.     Each Director Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Velodyne, the absence of good faith on their part, and a

reckless disregard for their duties to the Company and its shareholders that the Director Defendants were aware or should have been aware posed a risk of serious injury to the Company.

30.     The Director Defendants breached their duties of loyalty and good faith by causing the Company to misrepresent the information as detailed *infra*. The Director Defendants' subjected the Company to the costs of defending, and the potential liability from, the securities class action (and related lawsuits). As a result, Velodyne has expended, and will continue to expend, significant sums of money.

31.     The Director Defendants' actions have irreparably damaged Velodyne's corporate image and goodwill.

## THE FALSE AND MISLEADING STATEMENTS

32.     On November 9, 2020, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2020 (the "3Q20 10-Q"). The 3Q20 10-Q stated: "Based on the evaluation of our disclosure controls and procedures as of the end of the period covered by this Quarterly Report on Form 10-Q, our chief executive officer and chief financial officer concluded that, as of such date, our disclosure controls and procedures were effective at the reasonable assurance level."

33.     Moreover, the 3Q20 10-Q contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Gopalan and Hamer attesting to the accuracy of the Company's financial statements, the effectiveness of the Company's internal controls over financial reporting, and the disclosure of all fraud.

34.     On January 7, 2021, the Company announced its preliminary fourth quarter and full year 2020 financial results in a press release that stated:

- 2020 annual revenue of approximately $94 million
- Record shipments of 4,100 units

- $350 million of cash on the balance sheet at December 31, 202
- Long-term outlook remains strong, but at this time 2021 guidance withdrawn due to reduced near-term visibility

Velodyne Lidar (NASDAQ: VLDR, VLDRW), the global leader in lidar technology founded by David Hall with foundational patents, today announced preliminary fourth quarter 2020 revenue and provided an update on recent business trends and outlook. During the fourth quarter of 2020, Velodyne shipped more than 4,100 sensors to its global customer base, bringing the annual total units shipped in 2020 to more than 11,500, including over 600 solid state Velarray units in the fourth quarter alone. These unit amounts represent a single quarter record for Velodyne, and the company believes that it has sold more sensors in 2020 than reported by all of its competitors combined. Additionally, Velodyne increased its signed and awarded contracts to 25 and expanded its pipeline to 183 projects across multiple end-markets and use cases, up from 175 since the end of the third quarter of 2020.

35.     On January 13, 2021, the Company filed a Form 8-K with the SEC stating that David Hall had "voluntarily transitioned from serving as an employee and executive officer of the Company to a non-executive role."

36.     On January 22, 2021, the Company filed a Form 8-K with the SEC stating that Defendant Samardzich "would not stand for re-election as a Class I director at the Company's 2021 annual meeting" and that her decision "was not the result of any disagreement with the Company on any matter relating to the Company's operations, policies or practices."

37.     On February 18, 2021, the Company filed a Form 8-K with the SEC stating that James A. Graf had resigned as a director of the Company and that "Mr. Graf's decision to resign was not a result of any disagreement with the Company."

38.     The above statements identified in ¶¶ 31-36 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Defendants failed to disclose to investors: (i) that certain of the Company's directors had failed to operate with respect, honesty, integrity, and candor in their dealings with the Company's officers and directors; (ii) that the Company was investigating the foregoing matters;

and (iii) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## THE TRUTH EMERGES

39.     On February 22, 2021, the Company announced that the Board had "removed David Hall as Chairman of the Board and terminated Marta Hall's employment as Chief Marketing Officer of the Company" after the Audit Committee's investigation "concluded that Mr. Hall and Ms. Hall each behaved inappropriately with regard to certain Board and Company processes, and failed to operate with respect, honesty, integrity, and candor in their dealings with Company officers and directors."  In addition, the Company's Board formally censured Mr. Hall and Ms. Hall, but they would remain directors of the Company.  In a press release, the Company stated:

> Velodyne Lidar, Inc. (Nasdaq: VLDR, VLDRW) today announced that Dr. Joseph B. Culkin, PhD, who has served as a member of Velodyne Lidar's Board of Directors since September 2016, has been appointed Chairman of the Board, effective immediately, succeeding David Hall. The Company also announced today that Sally Frykman, Chief Communications Officer, has been appointed to the additional role of Chief Marketing Officer, effective immediately, replacing Marta Thoma Hall.

> These actions follow the completion of an investigation by the fully independent Audit Committee of the Company's Board of Directors, which commenced in December 2020. The investigation was aided by independent legal counsel, Keker, Van Nest & Peters LLP and reviewed certain statements and conduct by David Hall and Marta Thoma Hall. The investigation concluded that Mr. Hall and Ms. Hall each behaved inappropriately with regard to Board and Company processes, and failed to operate with respect, honesty, integrity, and candor in their dealings with Company officers and directors. Accordingly, the Board approved remedial actions including the removal of Mr. Hall as Chairman of the Board and the termination of Ms. Hall as an employee of the Company. Mr. Hall had previously informed the Board that he was voluntarily transitioning from Executive Chairman to Chairman on January 7, 2021. The Board also formally censured both Mr. Hall and Ms. Hall and directed them both to receive appropriate remedial training. They will remain members of the Company's Board of Directors.

40.     On this news, the Company's common stock fell $3.14, or approximately 15%, to close at $17.97 per share on February 22, 2021, on unusually heavy trading volume.  Further, the

Company's warrants fell $1.47, or approximately 20%, to close at $5.90 per warrant on February

22, 2021.

41.    On March 9, 2021, Defendant Hall sent the following letter to the Board:

Dear Velodyne Lidar Board of Directors (the "Board"):

I am writing to you today to directly refute the statements regarding my resignation from the Board included in Velodyne Lidar's (the "Company") recent Form 8-K filing. These statements do not accurately depict why I resigned and instead focus on the Company's decision to publicly censure Marta Hall and I based on unfounded claims which we strongly refute.

To be completely clear: I chose to resign from the Board because I had numerous concerns about the strategic direction and current leadership of Velodyne Lidar.

As the founder and former Chief Executive Officer of Velodyne Lidar, I oversaw years of growth and success that ultimately laid the groundwork for the Company to go public via a merger with a special purpose acquisition company ("SPAC") in 2020. Despite serving as the Executive Chairman of the Board following Velodyne Lidar's successful SPAC merger, it became quickly apparent to me that Jim Graf and Michael Dee – joint founders of the SPAC – wanted to curtail my involvement in the quality and selection of products being developed, the contracts negotiated and integrity of the Company's business moving forward. These actions, in my view, emboldened Chief Executive Officer Anand Gopalan to disregard my views.

***I firmly believe that the Board has fostered an anti-stockholder culture and that Velodyne Lidar's corporate governance is broken. Perhaps most unsettling was the Board's decision to rubberstamp an increased compensation package for Mr. Gopalan despite the Company releasing weak Q4 2020 earnings and missing year end forecasts.***

***The Board also recently attempted to manipulate the Company's corporate machinery by transitioning Christopher Thomas from a Class I director to a Class II director in an apparent move to avoid having him stand for re-election against my nomination of Eric Singer, a highly-qualified director candidate with significant public board experience.***

***As a whole, I believe the status quo in Velodyne Lidar's boardroom is unacceptable. The Board lacks prior public company experience, seems to prioritize its own self-interests over stockholders and has overseen the destruction of significant stockholder value.***

It was in light of these serious concerns – as well as the Board's complete disregard for my decades of experience and input – that made me come to the difficult

decision of submitting my resignation last week. Unfortunately, the Board as currently constituted appears to have no respect for the principles, values and culture that I spent years building at Velodyne Lidar. My wife, Marta Hall, will remain on the Board and continue to perform her fiduciary duties to best serve all Velodyne Lidar stockholders.

Sincerely,

David Hall
Founder of Velodyne Lidar, Inc.

(Emphasis added).

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

42.     Plaintiffs bring this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of Defendants' violations of Sections 10(b) and 21D of the Exchange Act, and their breaches of fiduciary duties and other wrongful conduct as alleged herein and that occurred during the Relevant Period.

43.     Plaintiffs will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

44.     Plaintiffs are current owners of the Company stock and have been owners of Company stock during the Relevant Period.  Plaintiffs understands their obligation to hold stock throughout the duration of this action and are prepared to do so.

45.     Because of the facts set forth herein, Plaintiffs have not made a demand on the Board of the Company to institute this action against the Director Defendants.  Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

46.     At the time this suit was filed, the Board was comprised of seven (7) members --

Culkin, Samardzich, Dee, Gopalan, Zarringhalam, Thomas and M. Hall.  Thus, Plaintiffs are required to show that a majority of Defendants, *i.e.*, four (4), could not exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

47.    The Director Defendants face a substantial likelihood of liability in this action because they caused the Company to issue false and misleading statements concerning the information described herein.  Because of their advisory, executive, managerial, and directorial positions with the Company, the Director Defendants had knowledge of material non-public information regarding the Company and were directly involved in the operations of the Company at the highest levels.

48.    The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

49.    The Director Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.  For the reasons that follow, and for reasons detailed elsewhere in this Complaint, Plaintiffs did not make (and was excused from making) a pre-filing demand on the Board to initiate this action because making a demand would have been a futile and useless act.

50.    Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

51.    Each of the Director Defendants authorized and/or permitted the false statements to

be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

52.     Additionally, each of the Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

## THE DIRECTOR DEFENDANTS WERE NOT INDEPENDENT

**Defendant Gopalan**

53.     Defendant Gopalan is the Company's CEO and President.  Defendant Gopalan is also a Director of the Company.  Defendant Gopalan is not disinterested or independent, and therefore, is incapable of considering demand because Gopalan (as CEO and President) is an employee of the Company who derives substantially all of his income from his employment with bluebird, making him not independent.  As such, Gopalan could not independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would have exposed him to liability and threaten his livelihood.

54.     This lack of independence and financial benefits received by Defendant Gopalan renders him incapable of impartially considering a demand to commence and vigorously prosecute this action.

55.     This lack of independence and financial benefits received by Defendant Gopalan renders him incapable of impartially considering a demand to commence and vigorously prosecute this action.  Further, Defendant Gopalan is a defendant in the securities class action entitled *Moradpour v. Velodyne Lidar, Inc., et al.*, Case 3:21-cv-01486 (N.D. Cal.) ("Securities Class

Action").

**Defendant Dee**

56.    Defendant Dee is the Company's President and CFO.  Defendant Dee is also a Director of the Company.  Defendant Dee is not disinterested or independent, and therefore, is incapable of considering demand because Dee (as CFO and President) is an employee of the Company who derives substantially all of his income from his employment with bluebird, making him not independent.  As such, Dee could not independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would have exposed him to liability and threaten his livelihood.

57.    This lack of independence and financial benefits received by Defendant Dee renders him incapable of impartially considering a demand to commence and vigorously prosecute this action.

**Audit Committee Defendants -- Samardzich and Dee**

58.    Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee are responsible for:

> Review and discuss the following with management, the internal auditors, and the independent auditor, as applicable:
>
> • The annual audit plan and scope of audit activities and monitor such plan's progress.
> • The scope and timing of the annual audit of the Company's financial statements.
> • ***The Company's annual audited and quarterly unaudited financial statements and annual and quarterly reports on Forms 10-K and 10-Q, including the disclosures in "Management's Discussion and Analysis of Financial Condition and Results of Operations," and recommend to the Board whether the audited financial statements should be included in the Company's Form 10-K.***
> • The results of the independent audit and the quarterly reviews of the Company's financial statements, and the independent auditor's opinion on the audited financial statements.

- ***The reports and certifications regarding internal control over financial reporting and disclosure controls and procedures***.
- Major issues regarding accounting principles and financial statement presentation, including any significant changes in the Company's selection or application of accounting principles, and major issues as to the adequacy of the Company's internal controls and any special audit steps adopted in light of material control deficiencies.
- Analyses prepared by management or the independent auditor setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, including analyses of the effects of alternative generally accepted accounting principles ("GAAP") methods on the financial statements.
- The effect of regulatory and accounting initiatives, as well as any off-balance sheet structures, on the Company's financial statements.
- Any problems or difficulties the independent auditor encountered in the course of its audit work, including any restrictions on the scope of the auditor's activities or on access to requested information, and management's response.
- Any significant disagreements between management and the independent auditor.  [Emphasis added].

59.     Defendants Samardzich and Dee breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, *inter alia*, allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise failed to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above.   Therefore, Defendants Samardzich and Dee face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

**Defendant M. Hall**

60.     Defendant M. Hall is married to Defendant D. Hall, the Company's founder, and has served as a Company director since January 2020.  She served as the Company's CMO from January 2020 until February 2021.  She also served as the Company's President and Chief Business Development Officer from December 2015 until January 2020.  She also served as Vice President of Marketing of the Company's predecessor, Velodyne Acoustics, from 2009 to 2010 and then as

President from 2010 until the Company was formed as an independent entity in December 2015. Additionally, according to the October 2020 Form 8-K, as of September 29, 2020, Defendant M. Hall, together with her husband, Defendant D. Hall, beneficially owned 92,223,730 shares of the Company's common stock, which represented 56.9% of the Company's outstanding common stock as of September 29, 2020, rendering her, together with her husband, a controlling shareholder. Thus, as the Company admits, Defendant M. Hall is a non-independent director. Upon information and belief, Defendant M. Hall has received and continues to receive compensation for her role as a director. As a trusted Company director and officer at the time, Defendant M. Hall was one of the primary participants, along with her husband, in the misconduct and the scheme to cause the Company to make false and misleading statements related thereto, consciously disregarded her duties to monitor such controls over reporting and engagement in the schemes, and consciously disregarded her duties to protect corporate assets. Moreover, Defendant M. Hall's long-standing personal and professional ties with the Company and certain individual defendants further preclude her from approaching any demand with disinterestedness and independence. Defendant M. Hall's husband's brother-in-law, Defendant Culkin, is a Company director; her son-in-law, David Heeren, has been employed by the Company since March 2017 as a senior technical product marketing manager and has made $103,129, $179,586, and $184,976 for the fiscal years ended December 31, 2017, 2018, and 2019, respectively; and her husband's daughter, Savannah Hall has been employed as a project coordinator by the Company since March 2017. Defendant M. Hall may fear retaliation against her family, in addition to herself, if she were to consider a demand against the Board. For these reasons, Defendant M. Hall breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

**Defendant Culkin**

61.     Defendant Culkin is the brother-in-law of Defendant D. Hall and has served as a Company director since September 2016 and as Chairman of the Board since February 19, 2021. Additionally, according to the October 2020 Form 8-K, as of September 29, 2020, Defendant Culkin, beneficially owned 13,559,196 shares of the Company's common stock, which represented 7.8% of the Company's outstanding common stock as of September 29, 2020.  As the Company admits, Defendant Culkin is a non-independent director.  Upon information and belief, Defendant Culkin has received and continues to receive compensation for his role as a director.  As a trusted Company director, he conducted little, if any, oversight of the misconduct (which Defendant Culkin engaged in and/or permitted despite being aware of it) or the Company's engagement in the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the schemes, and consciously disregarded his duties to protect corporate assets.  Moreover, Defendant Culkin's son-in-law, James Schwandt, has been employed by the Company since May 2017 as a senior program manager and has made $111,087, $168,013, and $172,571 for the fiscal years ended December 31, 2017, 2018, and 2019, respectively.  Defendant Culkin may fear retaliation against his son-in-law, in addition to himself, if he were to consider a demand against the Board, particularly Defendants D. Hall and M. Hall, the primary wrongdoers and effective controllers of the Company.

**Defendant D. Hall**

62.     Defendant D. Hall exercises significant influence over the business affairs of the Company, including any action requiring the approval of the Company's stockholders, such as the election of directors, the approval of a merger, or the sale of substantially all of the Company's assets.  In addition, the Company admits that the interests of Defendant D. Hall may differ from

that of other individuals including the Company investors.  As a result, the Company's Directors are beholden to Defendants D. Hall, M. Hall, and Culkin.  Defendant D. Hall and his family, including Defendants M. Hall and Culkin, control 56.9% as of the Company's outstanding stock and, consequently, the controlling share of the voting power in the Company as of September 29, 2020.  They have considerable influence over whether each Board member will retain their seat on the Board in the next Board election.  Defendant D. Hall and M. Hall's domination and control over the Board is not just hypothetical.  Defendants D. Hall and M. Hall recently demonstrated their willingness to exert control over the Board when, on or about February 22, 2021, they indicated their intent to nominate Singer to the Board.  Moreover, Defendants D. Hall and M. Hall agreed to compensate Singer directly in cash for serving as their nominee on the Board.

**Defendants Graf and Dee**

63.     Defendants Graf and Dee worked together at Morgan Stanley during the same time period before working together again at Graf Industrial.  Defendant Graf served as CEO of Graf Industrial from June 2018 until September 2020.  From 1987 to 1993, Defendant Graf worked as an analyst and then as an associate at Morgan Stanley. Defendant Dee worked as President and CFO and also served as a member of the board of directors of Graf Industrial from September 2018 until September 2020.  From 1981 to 2007, Defendant Dee worked at Morgan Stanley in a variety of senior leadership positions in its capital markets, mergers and acquisitions and firm management divisions, including acting as Regional Chief Executive Officer for Southeast Asia and as Head of Morgan Stanley's Houston office.

## COUNT I

### (Against Defendants Hamer and Gopalan for Violations of Sections 10(b) and 21D Of The Exchange Act)

64.     Plaintiffs incorporate by reference and reallege each and every allegation contained

above, as though fully set forth herein.

65.     The Company, along with Defendants Hamer and Gopalan are named as defendants in the Securities Class Action, which assert claims under the federal securities laws for violations of Sections 10(b) and 21D of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder.  If and when the Company is found liable in the Securities Class Action for these violations of law, the Company's liability will be in whole or in part due to Defendants Hamer and Gopalan's willful and/or reckless violations of their obligations as officers and directors of the Company.

66.     Through their positions of control and authority as officers of the Company, Defendants Hamer and Gopalan were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of the Company, including the wrongful acts described in the Securities Class Action and herein.

## COUNT II

### (Against the Director Defendants for Breach of Fiduciary Duty)

67.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

68.     The Director Defendants owed the Company fiduciary obligations.  By reason of their fiduciary relationships, the Director Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

69.     The Director Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

70.     The Director Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties.  Among other things, the Director Defendants breached their fiduciary duties of loyalty and good faith by allowing or permitting false and misleading statements

to be disseminated in the Company's SEC filings and other disclosures and, otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

71.     As a direct and proximate result of the Director Defendants' failure to perform their fiduciary obligations, the Company has sustained significant damages.  As a result of the misconduct alleged herein, the Director Defendants are liable to the Company.

72.     As a direct and proximate result of the Director Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill.  Such damage includes, among other things, costs associated with defending and/or settling securities lawsuits and governmental investigations, severe damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

## COUNT III

### (Against the Director Defendants for Waste of Corporate Assets)

73.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

74.     The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Period.  It resulted in continuous, connected, and ongoing harm to the Company.

75.     As a result of the misconduct described above, the Director Defendants wasted corporate assets by, *inter alia*: (a) paying excessive compensation, bonuses, and termination payments to certain of its executive officers; (b) awarding self-interested stock options to certain officers and directors; and (c) incurring potentially millions of dollars of legal liability and/or legal

costs to defend and/or settle actions addressing Defendants' unlawful actions.

76.     As a result of the waste of corporate assets, the Director Defendants are liable to the Company.

77.     Plaintiffs, on behalf of the Company, have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

(A)     Declaring that Plaintiffs may maintain this action on behalf of the Company and that Plaintiffs are adequate representatives of the Company;

(B)     Finding Defendants liable for breaching their fiduciary duties owed to the Company;

(C)     Directing Defendants to take all necessary actions to reform and improve the Company's corporate governance, risk management, and internal operating procedures to comply with applicable laws and to protect the Company and its stockholders from a repeat of the rampant wrongful conduct described herein;

(D)     Awarding damages to the Company for the harm the Company suffered as a result of the Defendants' wrongful conduct;

(E)     Awarding damages to the Company for Defendants Hamer and Gopalan's violations of Sections 10(b) and 21D of the Exchange Act;

(F)     Awarding Plaintiffs the costs and disbursements of this action, including attorneys', accountants', and experts' fees; and

(G)     Awarding such other and further relief as is just and equitable.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: March 16, 2021

**BIELLI & KLAUDER, LLC**

*/s/ Ryan M. Ernst*
Ryan M. Ernst (#4788)
1204 N. King Street
Wilmington, DE 19801
Telephone: (302) 803-4600
Facsimile: (302) 397-2557
Email: rernst@bk-legal.com

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Attorneys for Plaintiffs*